IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRYSTAL G.,[1]

                   Plaintiff,

         v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                   Defendant.

Case No. 3:20-cv-01429-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Crystal G. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

this appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is named as the defendant in place of "Commissioner Social Security Administration." *See* FED. R. CIV. P. 25(d)(1).

U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in December 1986, making her thirty-one years old on March 30, 2018, her alleged disability onset date. (Tr. 23, 147-48.) Plaintiff graduated from high school with a regular diploma, attended community college, studied abroad in Europe, and has past relevant work experience as a fast-food worker, short order cook, and cashier. (Tr. 23, 216-17,

PAGE 2 – OPINION AND ORDER

325.) In her application, Plaintiff alleged disability due to autism and borderline intellectual

functioning. (Tr. 215.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and

on December 13, 2018, Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. 89.) Plaintiff and a vocational expert ("VE") appeared and testified at an

administrative hearing held on August 26, 2019. (Tr. 30-48.) On September 13, 2019, the ALJ

issued a written decision denying Plaintiff's application. (Tr. 13-25.) On June 16, 2020, the

Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the

final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's

decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*,

262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-25.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 23, 2018, her application date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "autism and borderline intellectual functioning." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 16.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) Plaintiff is limited to carrying out simple instructions; (2) Plaintiff is limited to no contact with the general public; (3) Plaintiff is limited to no more than occasional contact with coworkers; and (4) Plaintiff is limited to no teamwork assignments. (Tr. 17.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a fast-food worker, short order cook, and cashier. (Tr. 23.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as an inspector and laundry worker, industrial cleaner, and store laborer. (Tr. 23-24.)

///

## DISCUSSION

Plaintiff argues on appeal that the Commissioner erred by failing to provide: (1) specific, clear, and convincing reasons to discount Plaintiff's symptom testimony; (2) legally sufficient reasons to reject medical opinion evidence; and (3) legally sufficient reasons to reject lay witness statements.[3] (Pl.'s Opening Br. at 7, 14, 16.) As explained below, the Court concludes that the ALJ's decision is free from harmful legal error and supported by substantial evidence, and therefore the Court affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

///

---

[3] Plaintiff also claims for the first time in her Reply that "the ALJ had no authority to deny this case due to [then-Commissioner] Saul's unconstitutional appointment." (Pl.'s Reply at 12-13.) The Court declines to address this argument. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief.") (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 18, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony. The ALJ satisfied that standard here.

#### 1.     Activities of Daily Living

Plaintiff argues that the ALJ erred by "engag[ing] in the wholesale, generalized rejection of Plaintiff's credibility" without identifying any specific symptom testimony that was inconsistent with Plaintiff's activities of daily living. (Pl. Opening Br. at 12-13.)

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.");

PAGE 6 – OPINION AND ORDER

*Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

The ALJ found that Plaintiff's "statements regarding her activities of daily living are inconsistent with [her] allegations, and suggest a greater level of function." (Tr. 20.) The ALJ supported her conclusion by citing Plaintiff's ability to "care for her personal hygiene independently, prepare meals, and perform household chores, to include cleaning and laundry." (*Id*.) The ALJ also cited Plaintiff's reports that she "is able to care for her pet dog," "operate a motor vehicle and utilize public transportation," can "use a computer, read, use the phone, and watch television," and "plays computer games for recreation." (Tr. 20, 206.) The ALJ further cited Plaintiff's reports that she can "manage her personal finances, to include paying bills, counting change, handling a savings account, and using a checkbook/money orders." (*Id*.) Finally, the ALJ cited to records demonstrating that Plaintiff's hobbies and interests include reading, art, and sewing, and she reports that she does these things "very well and every day." (Tr. 20, 209.)

Plaintiff alleged she was unable to sustain full-time employment due to her autism and borderline intellectual functioning, but provided very few details about her limitations. (*See, e.g.*, Tr. 205, 210-11.) The ALJ's conclusion that Plaintiff's daily activity is inconsistent with an alleged inability to work was a clear and convincing reason for the ALJ to discount Plaintiff's testimony and was supported by substantial evidence in the record.

Plaintiff argues that the ALJ's findings were not sufficiently specific. (Pl.'s Opening Br. at 7) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)). The Court disagrees. In *Brown-Hunter*, the Ninth Circuit held that an ALJ is required "to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the

record, to support that determination." 806 F.3d at 489. In that case, the ALJ had "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she has alleged.'" Id. at 493. The Ninth Circuit held that the ALJ erred, noting that a reviewing court could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible." Id. at 494.

Here, in contrast, the ALJ did not make a general credibility finding but rather cited specific activities of daily living demonstrating that Plaintiff's impairments were less serious than she alleged, and therefore the Court is able to "reasonably discern" the ALJ's path. *See Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (finding the claimant's reliance on *Brown-Hunter* "unavailing," and stating that although "the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonably discern' the ALJ's path") (citation omitted).

Finally, Plaintiff argues that the ALJ's reliance on Plaintiff's reported activities was erroneous because the ALJ failed to evaluate the "sporadic, rest-punctuated nature of the activities" or determine whether Plaintiff's activities would transfer to the workplace. (Pl.'s Opening Br. at 7.) However, "[t]he Ninth Circuit has explicitly held that, '[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Porter v. Astrue*, No. 08-CV-33-HU, 2009 WL 2595562, at *15 (D. Or. Aug. 19, 2009) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (holding that "[o]ur

cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits"). Further, Plaintiff identifies no testimony or medical opinion evidence suggesting that she requires rest between activities.

In summary, the ALJ did not err in discounting Plaintiff's testimony on the ground that her alleged level of impairment is inconsistent with her reported daily activities.

### 2.    Treatment Record

Plaintiff also argues the ALJ erred by relying on her "conservative care and the alleged failure to follow prescribed treatment" to discount Plaintiff's symptom testimony. (Pl. Opening Br. at 10.)

The ALJ discounted Plaintiff's testimony based on her treatment history. (Tr. 19-20.) In support, the ALJ found that Plaintiff's inconsistent and conservative treatment and lack of compliance with treatment "suggest[ed] a level of function greater than" Plaintiff alleged. (*Id.*) Both are valid reasons to discount a claimant's subjective symptom testimony, and were supported by substantial evidence here. *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment . . . 'can cast doubt on the sincerity of the claimant's [symptom] testimony.'" (quoting *Tommasetti*, 533 F.3d at 1039)), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

In evaluating Plaintiff's treatment history, the Court notes that the Ninth Circuit has "criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (simplified). The Ninth

Circuit addressed the issue in *Molina*, rejecting the claimant's argument that the ALJ erred in relying on her failure to seek or follow prescribed treatment. *Molina*, 674 F.3d at 1113. The Ninth Circuit emphasized that despite the provider's "repeated efforts to persuade [the claimant] to seek psychiatric treatment for her anxiety disorder, she failed to do so until after she applied for disability benefits," and although the claimant "provided reasons for resisting treatment, there was no medical evidence that [the claimant's] resistance was attributable to her mental impairment rather than her own personal preference." *Id.* at 1114.

Similarly here, there is no evidence in the record that Plaintiff's failure to seek treatment or to follow through with treatment recommendations was attributable to her impairments. On March 6, 2018, Plaintiff was discharged from Cascadia Behavioral Health because "[f]urther treatment is not appropriate at facility." (Tr. 356.) The discharge record reflects that "[Plaintiff] no longer meets the criteria for adjustment disorder as she has successfully transitioned from unemployment and receiving an Autism diagnosis" and "[Plaintiff] has current community support to address her goal of connecting to community resources, improving communication, and pursuing education." (*Id.*) Plaintiff was provided contact information for local autism resources and support groups. (*Id.*) There is no record of Plaintiff seeking or receiving any additional mental health treatment from any provider thereafter. (Tr. 401.)

On August 6, 2018, five months after Plaintiff's discharge from Cascadia Behavioral Health, Plaintiff became a patient at Southwest Family Physicians. (*Id.*) The medical records indicate the treatment Plaintiff sought from this provider was unrelated to her claimed impairments, and instead focused on routine care, hypothyroidism, a vitamin D deficiency, a

buffalo hump, weight management, and contraception.[4] (Tr. 402, 429, 435, 438, 440.) The only mention of autism in this provider's records is a referral to A Hope for Autism completed at the request of Plaintiff's mother, but there is no record that Plaintiff ever followed up. (Tr. 483-84.)

The ALJ concluded that "if the limitations imposed by [Plaintiff's] condition were as broad and limiting as [] alleged" it would be "reasonable to expect evidence of treatment for her various alleged impairments." (Tr. 20.) The inconsistency between Plaintiff's alleged limitations and her treatment record was a clear and convincing reason to discount her symptom testimony and was supported by substantial evidence. *See Herbert F. v. Saul*, No. CV 20-4280-E, 2020 WL 7360277, at *4 (C.D. Cal. Dec. 14, 2020) (holding that where "for months at a time, Plaintiff sought no treatment at all, including no treatment for his autism diagnosis[,]" the ALJ did not err by discounting Plaintiff's testimony for "failure to pursue more aggressive treatment" and in light of "the relatively conservative nature" of the treatment).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

Plaintiff filed her application in April 2018. (Tr. 13.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

---

[4] The ALJ noted, and the record reflects, that Plaintiff missed multiple medical appointments with this provider. (Tr. 20, 443, 485.) The practice sent Plaintiff a letter in April 2019, stating that if she continued to miss appointments, Southwest Family Physicians "may have no alternative than to direct you to another physician and/or clinic for medical care." (Tr. 481.)

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-CV-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020), *aff'd sub nom. Orren v. Kijakazi*, No. 21-35006, 2021 WL 5906142 (9th Cir. Dec. 14, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "'the more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2).

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally

supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).

**B.** **Analysis**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinions of Dr. Martin Van Eerd ("Dr. Eerd"), Dr. Gary Sacks ("Dr. Sacks"), and Plaintiff's treating counselor, Jenny Urban ("Urban"). (Pl.'s Opening Br. at 11.)

**1.** **Dr. Eerd**

**a.** **Dr. Eerd's Opinion**

Dr. Eerd completed a psychological survey and mental status exam of Plaintiff on March 15, 2013, at the request of the Arizona Department of Economic Security. (Tr. 317-22.) In his report, Dr. Eerd stated that Plaintiff presented in an immature manner, that her "grooming was clean, although disheveled with torn blouse," her hands and nails were attended, her hair was washed and brushed, and coordination and balance seemed fair. (Tr. 317-18.) Dr. Eerd further stated that Plaintiff presented with "good cooperative effort, [that] her [p]ersistence on tasks was fair, but at times she appeared distracted." (Tr. 319.) Plaintiff's speech was fast and pressured, her expression was articulate, and her thought content appeared simplistic and was stilted and distracted at times. (*Id.*) Plaintiff's mood and affect were normal, her associations were concrete, and her cognitive intellectual functioning appeared within the normal range. (*Id.*) Plaintiff's concentration was fair, she was friendly and somewhat anxious in her greeting, her eye contact was interested, and she was cooperative and willing to participate. (*Id.*) Plaintiff's judgment and insight appeared reduced, her expression was somewhat flat, and her style of interaction appeared indifferent. (*Id.*)

When Dr. Eerd inquired whether Plaintiff experienced depressed mood or symptoms, Plaintiff said no and reported that she sleeps seven to eight hours at night, feels rested upon waking, and had a high energy level. (*Id.*) Plaintiff stated she did not have any mental health complaints or concerns. (*Id.*) Plaintiff's chief complaint for what prevented her from working was a thyroid condition, and side effects from treatment for the thyroid condition including weight gain and fatigue. (Tr. 318.)

When Dr. Eerd asked Plaintiff about her activities of daily living, she reported that she can take care of her own hygiene, dress, and medication, can cook simple meals, do basic household chores, take care of her pet dog, shop, and pay bills. (*Id.*) Plaintiff also reported she visited with friends on a regular basis, takes public transportation, drives, and keeps a journal "in order to complete tasks on time." (*Id.*) Dr. Eerd noted that Plaintiff was oriented to time, place, person, and situation, received an MMSE [mini-mental state exam] score of 30 out of 30, "responded fairly to basic informational inquiry and abstract thoughts for similarities," had fair response for vocabulary, less than expected for proverbs, good social awareness, and good social judgment. (Tr. 319.)

Dr. Eerd diagnosed Plaintiff with adjustment disorder by history and summarized his evaluation as Plaintiff presenting in a "polite approach with compliant manner," her effort and motivation were good, her approach to authority was "interested," her response to failure was "accepting of difficulties," and her interview test style "appeared simplistic." (Tr. 320.) Dr. Eerd opined that Plaintiff "was adequate in responding and recalling detailed instructions," and she "presents with adequate ability to carry out short simple tasks and fair ability for detailed instruction." (Tr. 321.) Dr. Eerd noted that Plaintiff would "likely benefit from specialized supervision [but] can make simple work-related decisions and her ability to complete a work

week is interrupted by symptoms of anxiety, avoidance, and immature approach." (*Id.*) Plaintiff has a limited ability to interact with the general public and is "avoidant in accepting instruction and criticism" but was socially adequate in her interaction and grooming. (Tr. 322.) Dr. Eerd recommended job training for Plaintiff. (*Id.*)

### b.    The ALJ's Treatment of Dr. Eerd's Opinion

The ALJ found Dr. Eerd's opinion to be unpersuasive because it was "dated" and "lack[ed] an adequate function-by-function analysis for the purposes of Social Security disability evaluation."[5] (Tr. 21.)

### c.    Disposition

The ALJ did not err by discounting Dr. Eerd's opinion on the ground that it was "dated." The Ninth Circuit has held "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)); *see also Warzecha v. Berryhill*, 692 F. App'x 859, 860 (9th Cir. 2017) (same). Here, Dr. Eerd's evaluation predated Plaintiff's alleged disability onset date by five years. (Tr. 13, 317-22.) Thus, the ALJ's conclusion that Dr. Eerd's opinion was not persuasive was supported by substantial evidence in the record. *Cf. Gunderson v. Astrue*, 371 F. App'x 807, 809 (9th Cir. 2010) (holding that an ALJ did not err in discounting a

---

[5] The Commissioner suggests that the Court should infer that the ALJ discounted the opinion for additional reasons, i.e., "that Dr. Eerd's opinion was inconsistent with the relevant evidence" and that "Dr Eerd did not—and could not—support his opinion with evidence from the period at issue." (Def.'s Br. at 16.) The Court declines to make such an inference. *See Caldwell v. Saul*, 840 F. App'x 907, 910 (9th Cir. 2020) ("[L]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") (simplified); *Burrell*, 775 F.3d at 1138 ("But the ALJ did not identify those inconsistencies. We are constrained to review the reasons the ALJ asserts.") (simplified).

psychologist's opinion where the evaluation was conducted "nearly two years before the alleged onset date" (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988) (concluding that the ALJ correctly rejected medical evidence because it predated the relevant time period)).

The ALJ provided at least one valid reason for discounting Dr. Eerd's opinion and therefore the Court does not address Plaintiff's other arguments. *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) ("[If the] ALJ provided at least one valid reason to discount [the evidence at issue], error in remaining reasons is harmless[.]") (citation omitted).

### 2.    Dr. Sacks

#### a.    Dr. Sacks's Opinion

Dr. Sacks met with Plaintiff one time in April 2017 at the request of the Multnomah County Developmental Disability Services Division ("DDSD") to "determine her emotional and functional capabilities as they relate to agency benefits eligibility." (Tr. 324.) Dr. Sacks diagnosed Plaintiff with autism spectrum disorder without intellectual disability and noted that Plaintiff did not suffer from a mental health diagnosis other than autism and that "autism is the sole cause of her limited functional capability." (Tr. 326.)

#### b.    The ALJ's Treatment of Dr. Sacks's Opinion

The ALJ found that Dr. Sacks's opinion was unpersuasive, stating that it was "conclusive and an opinion reserved by the Commissioner" and lacked an adequate function-by-function analysis.[6] (Tr. 21.)

///

---

[6] The Commissioner argues that under the new regulations, Dr. Sacks's opinion is not a "medical opinion," but rather "other medical evidence." (Def.'s Br. at 18.) The Court finds that the ALJ provided a legally sufficient reason to discount Dr. Sacks's opinion under either categorization.

### c.    Disposition

The ALJ did not err by discounting Dr. Sacks's opinion on the ground that it was conclusory.

An ALJ need not give weight to conclusory opinions. *See, e.g.*, *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (finding that the ALJ did not err in discounting a medical opinion where the physician's "meager opinion provided no basis for concluding that [claimant] was disabled" (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (finding that an ALJ properly rejected a medical opinion where the opinion was "conclusory and unsubstantiated by relevant medical documentation")).

Here, Dr. Sacks concluded that Plaintiff suffers from autism spectrum disorder without intellectual disability or a mental health diagnosis. (Tr. 326.) Dr. Sacks summarized Plaintiff's self-reports, test scores, and a limited subset of her medical records, but the only other conclusion he offered is that Plaintiff's impairments are related to her developmental disability and not primarily attributed to another condition. (Tr. 328.) That was the purpose of his DDSD evaluation but, in fact, his report resulted in the denial of DDSD services for Plaintiff because "she was found ineligible for services [] due to her adaptive scores being out of range for requiring training and support similar to a person with an intellectual disability." (Tr. 295.) Although Plaintiff asserts that that the opinion is not conclusory, she does not identify any autism-related limitations or recommendations in Dr. Sacks's report that the ALJ did not already incorporate in Plaintiff's RFC.

The ALJ's conclusion that Dr. Sacks's opinion was conclusory is supported by substantial evidence in the record, and the ALJ did not err. *See Gilliland*, 821 F. App'x at 799 ("[If the] ALJ provided at least one valid reason to discount [the evidence at issue], error in remaining reasons is harmless[.]") (citation omitted).

### 3.    Urban

#### a.    Urban's Opinion

On September 28, 2017, Urban drafted a "To Whom It May Concern" letter addressing Plaintiff's ability to work and need for developmental disability services. (Tr. 330.) In the letter, Urban explained that Plaintiff had been a client at Cascadia Behavioral Health Care since February 2016. (*Id*.) Urban stated that at the time of intake, Plaintiff "presented with social interaction problems including no social supports outside of her family, strained familial relationships, and inability to maintain employment due to interpersonal issues." (*Id*.) Urban notes Plaintiff "consistently presented with no mental health symptoms outside of adjustment disorders from moving and loss of employment." (*Id*.) Urban also stated that Plaintiff "has one of the more significant presentations" of autism, and "presents with difficulties tracking conversation and concrete thought processes." (*Id*.) Urban noted that Plaintiff reported difficulty feeling empathy and that Plaintiff "needs developmental disability services to improve her interpersonal skills and independent living skills." (*Id*.) Finally, Urban opined that Plaintiff's "current level of interpersonal skills including limited ability to follow instruction, limited ability of tracking conversations, and irritability at receiving feedback make long term and consistent employment unrealistic." (*Id*.)

Urban also completed a "check the box" questionnaire on March 6, 2018, regarding Plaintiff's work-related abilities. (Tr. 332-35.) In the questionnaire, Urban rated Plaintiff as "markedly limited" in eleven categories, "moderately limited" in three categories, and not limited in one category. (Tr. 332-33.) She marked the remaining five categories as "not ratable" because, as Urban noted, Plaintiff "has not been observed outside of the treatment setting or has not discussed [those] area with [the] treatment team." (Tr. 334.) Urban also noted in the

questionnaire that Plaintiff would likely be absent one day per month,[7] and that Urban believed Plaintiff's symptoms caused her to "los[e] multiple jobs including her medical discharge from the air force." (Tr. 335.)

On the same date, Urban discharged Plaintiff from Cascadia Behavioral Healthcare, noting Plaintiff "has not responded well to individual counseling [and Plaintiff] does not acknowledge areas of need . . . ." (Tr. 356.) Urban concluded that Plaintiff "no longer meets the criteria for adjustment disorder as she has successfully transitioned from unemployment and receiving Autism diagnosis." (*Id.*) Urban terminated Plaintiff's services because Plaintiff was "no longer eligible for mental health treatment as she does not qualify for mental health diagnosis and her current symptoms are best explained by [autism]." (*Id.*)

### b.    The ALJ's Treatment of Urban's Opinion

The ALJ found Urban's opinion to be unpersuasive for several reasons, including that it was inconsistent with Plaintiff's activities of daily living and the objective medical evidence and overestimates the limiting effects of Plaintiff's impairments:

> Urban's opinion is inconsistent with and unsupported by the medical record. []
> Urban appears to overestimate the limiting effects of the [Plaintiff's] severe
> impairments. . . . [T]he medical record fails to show consistent or progressive
> treatment of the [Plaintiff's] mental health impairments, which supports a level of
> function greater than one alleged by the [Plaintiff]. Moreover, the [Plaintiff's]
> statements regarding activities of daily living are consistent with the [Plaintiff] is
> not totally disabled and can perform work with limitations provided in the
> residual functional capacity.

(Tr. 22.)

///

///

---

[7] This observation is undermined by Urban's acknowledgment that she could not observe or rate Plaintiff's ability to "maintain regular attendance." (Tr. 333.)

c.        Disposition

Plaintiff argues that the ALJ erred because "the ALJ's use of alleged non-compliance and insufficient treatment was erroneous in respect to Plaintiff's testimony and for the same reasons was erroneous in respect to his treatment of [Urban's] opinions." (Pl.'s Opening Br. at 12.) "Similarly, the ALJ's use of activities to undermine Plaintiff's general credibility was erroneous [] and was erroneous in respect to her rejections of [Urban] for the same reason." (*Id.*) As discussed above, the ALJ did not err by discounting Plaintiff's symptom testimony on the grounds that it was inconsistent with her activities of daily living and treatment history. For the same reasons, the ALJ did not err by discounting Urban's opinion on the same grounds.

## III.    LAY WITNESS TESTIMONY

### A.        Applicable Law

An ALJ "must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "germane to each witness." *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss*, 427 F.3d at 1218. "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F.

App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

**B.    Analysis**

Plaintiff argues that the ALJ erred in discounting the lay witness testimony provided by Plaintiff's father, David G., and in failing to address the testimony provided by Plaintiff's supervisor at her part-time job at Safeway, Ashley Jones ("Jones"). (Pl.'s Opening Br. at 13.)

**1.    David G.**

The ALJ gave two reasons for discounting David G.'s testimony, including David G.'s "relationship to the [Plaintiff]" and that David G.'s opinion was "not consistent with the preponderance of the opinions and medical evidence in the case." (Tr. 22-23.) The Commissioner acknowledges that it was error to discount David G.'s opinion based on his relationship to Plaintiff, but argues such error was harmless because "the ALJ provided other germane reasons to discount [David G.'s] statements." (Def.'s Br. at 9.) The Court agrees.

The Court has already concluded that the ALJ properly discounted Plaintiff's symptom testimony as inconsistent with her activities of daily living and treatment history, and the same analysis applies to David G.'s testimony reporting similar limitations (albeit in more detail). *See Blacksher v. Berryhill*, 762 F. App'x 372, 377 (9th Cir. 2019) ("Ms. Blacksher's testimony was substantially similar to that of her son. Because the ALJ provided clear and convincing reasons for discounting Blacksher's statements, 'it follows that the ALJ also gave germane reasons for rejecting' Ms. Blacksher's similar testimony, and so any error was harmless." (citing *Valentine*, 574 F.3d at 694)). Thus, the ALJ provided germane reasons for discounting David G.'s testimony.

///

///

### 2.    Jones

Plaintiff argues that the ALJ erred by failing to address Jones's lay witness statement. (Pl.'s Opening Br. at 14-15.) The ALJ was required to, but did not, address Jones's testimony. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment.").

Jones's questionnaire indicated that Plaintiff does not always complete the duties required of her position, is not able to complete her duties without special assistance, and does not complete her work in the same amount of time as others in similar positions. (Tr. 270.) Jones checked boxes for the type of assistance provided to Plaintiff including fewer or easier duties, lower production standards, extra help/supervision, lower quality standards, and less hours. (*Id.*) Jones reported that Plaintiff regularly reported for work as scheduled, but also that Plaintiff was frequently absent from work. (Tr. 270-71.) Plaintiff was seventy percent as productive as other employees, and her work was not as satisfactory as compared to others in similar positions. (Tr. 272.) Despite all of these limitations, Jones concluded that Plaintiff was "a great courtesy clerk!" (Tr. 273.)

The Commissioner acknowledges that the ALJ erred by failed to consider Jones's testimony but argues any error was harmless because it is "inconsequential to the non-disability determination." (Def.'s Br. at 9-10.) The Court agrees.

An ALJ's error is harmless if it "was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1169 (quotations omitted). In *Molina*, the Ninth Circuit discussed the harmless error analysis and reaffirmed the "long-settled rule that [courts] will not set aside the denial of a disability claim unless 'the Secretary's findings are not supported by substantial evidence in the record as a

whole.'" *Molina*, 674 F.3d at 1121 (quoting *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). The Ninth Circuit found the ALJ erred when she failed to explain her reasons for disregarding the lay witness testimony. *Id.* at 1122. To determine whether the error was harmless, the court first found that the lay witness testimony "described the same limitations" as the claimant's own testimony and then found that the ALJ rejected claimant's testimony "based on well-supported, clear and convincing reasons." *Id.* After noting that "the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony," the court held that the ALJ's failure to give germane reasons for rejecting the lay witness testimony was harmless. *Id.*

Similarly here, Jones's testimony regarding Plaintiff's job performance mirrors Plaintiff's self-reported limitations. (Tr. 205, 210-11.) As discussed above, the ALJ properly discounted Plaintiff's testimony. As the Court found in *Molina*, "where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons.'" 674 F.3d at 1121 (citation omitted).

Furthermore, Jones's report related to Plaintiff's job performance as a Safeway courtesy clerk, which is not the type of job the ALJ identified as appropriate for Plaintiff's RFC. That her current employment is not an appropriate fit for Plaintiff's limitations is inconsequential to the ALJ's conclusion that there are other jobs Plaintiff is capable of performing. *See, e.g.*, *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs.").

///

///

The Court finds that the ALJ's failure to address Jones's lay witness testimony was harmless error because it was "inconsequential to the ultimate nondisability determination." *Carmickle*, 533 F.3d at 1169.

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 18th day of January, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge